**RECORD NO. 21-4091**

*In The*

# United States Court of Appeals

### For The Fourth Circuit

## UNITED STATES OF AMERICA,

*Plaintiff – Appellee,*

**v.**

## SHAMAURI LEVON SHIVERS,

*Defendant – Appellant.*

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF NORTH CAROLINA AT ASHEVILLE

───────────

## BRIEF OF APPELLANT

───────────

**Anthony Martinez**
**FEDERAL PUBLIC DEFENDER FOR**
  **THE WESTERN DISTRICT OF NORTH CAROLINA**

**Joshua B. Carpenter**
**Appellate Chief**
**One Page Avenue, Suite 210**
**Asheville, North Carolina 28801**
**(828) 232-9992**

*Counsel for Appellant*

**THE LEX GROUP** ♦ 1108 East Main Street ♦ Suite 1400 ♦ Richmond, VA 23219
(804) 644-4419 ♦ (800) 856-4419 ♦ Fax: (804) 644-3660 ♦ www.thelexgroup.com

## **<u>TABLE OF CONTENTS</u>**

**<u>Page</u>**

TABLE OF AUTHORITIES ...................................................................iii

INTRODUCTION...................................................................... 1

JURISDICTIONAL STATEMENT ................................................ 1

STATEMENT OF THE ISSUE .................................................... 2

STATEMENT OF THE CASE ..................................................... 2

SUMMARY OF ARGUMENT .................................................... 6

STANDARD OF REVIEW.......................................................... 8

ARGUMENT .......................................................................... 8

    I.    The government's evidence is insufficient to satisfy the reckless-
endangerment standard under U.S.S.G. § 3C1.2........................................ 8

        A.    The undisputed facts in this case are insufficient to satisfy
the Section 3C1.2 standard ................................................ 9

        B.    The district court's decision to apply the enhancement was
flawed both legally and factually ...................................... 12

            1.    The district court's reliance on the creation of a risk
to self is legally erroneous ...................................... 12

            2.    The district court's assertion that a substantial risk
arose from Shivers "reaching for" the firearm is
unsupported by evidence...................................... 13

            3.    The evidence also does not establish a risk of
accidental discharge or a risk of other danger to the
community.......................................................... 16

CONCLUSION .......................................................................................................... 19

REQUEST FOR ORAL ARGUMENT ........................................................................ 20

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Gall v. United States,*
    552 U.S. 38, 51 (2007) ........................................................................... 8

*United States v. Allen,*
    446 F.3d 522 (4th Cir. 2006)................................................................. 8

*United States v. Dennings,*
    922 F.3d 232 (4th Cir. 2019).......................................................*passim*

*United States v. Dodd,*
    770 F.3d 306 (4th Cir. 2014)................................................................. 8

*United States v. Jefferson,*
    58 F. App'x 8 (4th Cir. 2003)........................................7, 16, 17, 19

*United States v. Lard,*
    327 F.3d 551 (7th Cir. 2003)............................................................ 18

*United States v. May,*
    430 F. App'x 529 (6th Cir. 2011) .................................................17, 18

*United States v. Mukes,*
    980 F.3d 526 (6th Cir. 2020).......................................................*passim*

*United States v. Osborne,*
    514 F.3d 377 (4th Cir. 2008)................................................................. 8

## STATUTES

18 U.S.C. § 924(c) ......................................................................2, 3, 5, 14

18 U.S.C. § 1951(a) .............................................................................. 2

18 U.S.C. § 3231 .................................................................................... 1

18 U.S.C. § 3553(a) ........................................................................................... 6

18 U.S.C. § 3742 ............................................................................................... 2

28 U.S.C. § 1291 ............................................................................................... 2

## **GUIDELINE**

U.S.S.C. § 3C1.2 ..................................................................................... *passim*

## INTRODUCTION

The district court encouraged the defendant, Shamauri Shivers, to appeal an adverse ruling in this case so that this Court can "clarify what the law is" regarding the scope of a frequently applied enhancement under the federal sentencing guidelines. JA 102. The enhancement applies if a defendant, while fleeing from law enforcement, "create[s] a substantial risk of death or serious bodily injury to another person." U.S.S.C. § 3C1.2. The district court applied the enhancement while stating that it viewed the decision as a "very close call." JA 101.

This Court should reverse. The undisputed facts show that Shivers discarded a firearm in plain view of officers while fleeing in the aftermath of a convenience-store robbery. Unlike in other cases that have applied the enhancement, the government did not assert or prove any aggravating factors, such as furtive hand movements with the firearm (that could create a risk of the officers firing in self-defense) or the cocking of the firearm (that could create a risk of accidental discharge). Absent such additional factors, the simple act of discarding a firearm during flight actually *decreases* the risk to all involved by discouraging officers from discharging their own weapons. The Sixth Circuit has deemed the enhancement inapplicable in similar circumstances, *see United States v. Mukes*, 980 F.3d 526 (6th Cir. 2020), and this Court should do the same.

## JURISDICTIONAL STATEMENT

The United States District Court for the Western District of North Carolina had jurisdiction over this criminal case under 18 U.S.C. § 3231. The district court

entered a final judgment on February 16, 2021. JA 127-133. Shivers timely appealed

on March 1, 2021. JA 134. This Court has jurisdiction under 18 U.S.C. § 3742 and 28

U.S.C. § 1291.

## STATEMENT OF THE ISSUE

I.     Does the government carry its burden of proving that a defendant created "a

substantial risk of death or serious bodily injury to another person" by showing only

that the defendant discarded a firearm in plain view of pursuing law enforcement

officers, without any additional evidence that the defendant's actions created a risk of

accidental discharge or a risk of the officers firing their own weapons?

## STATEMENT OF THE CASE

In January 2019, Shivers robbed a Hot Spot convenience store in Asheville,

North Carolina. JA 141. He did so by pointing a firearm at a cashier and demanding

that she give him cash, and then taking money from the store's safe and the cashier's

wallet. JA 141. After a federal grand jury indicted him for the robbery, Shivers pled

guilty to one count of Hobbs Act robbery (18 U.S.C. § 1951(a)) and one count of

brandishing a firearm in furtherance of a crime of violence (18 U.S.C. § 924(c)). *See* JA

13-39, 40-51.

The sole issue in this appeal relates to the proper calculation of the sentencing

guidelines range. Before sentencing, a United States Probation Officer prepared a

Presentence Investigation Report (PSR) that recommended an aggregate sentencing

range of 121 to 130 months, consisting of 37 to 46 months for the robbery count,

plus a mandatory consecutive sentence of 84 months for the § 924(c) brandishing count. *See* JA 155 (PSR at ¶¶ 72-74). The PSR's calculation included a two-level enhancement under U.S.S.G. § 3C1.2. That enhancement applies if "the defendant recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer." U.S.S.G. § 3C1.2.

The facts relevant to the enhancement's applicability (or non-applicability) are undisputed and set forth in the government's Statement of Relevant Conduct, which was incorporated into the PSR and adopted by the district court. JA 142-43. The Statement explains that the robbery was reported while in progress by a detective monitoring the store's surveillance system. JA 142. Before Shivers exited the store, responding officers had already "set[ ] up a perimeter." JA 142. The following two paragraphs describe what happened next:

> Multiple APD officers challenged the suspect as he exited the store, but the suspect ran west on Hilliard Avenue. Officers gave chase. APD Officer Cobeo confronted the suspect with her patrol rifle at the corner of Hilliard and Grove Street. The suspect, soon identified as defendant SHIVERS, put his hands in the air and submitted to being handcuffed.

> Officer Crume, among other officers, was involved in the foot pursuit. Officer Crume noticed the suspect throw a silver revolver in the street as he ran toward Grove Street. The firearm was later recovered and determined to be a Taurus .357 caliber revolver.

JA 142. The PSR also noted that the revolver was "loaded." JA 143. Neither the PSR nor the government alleged any additional facts, such as that the safety was off or that the gun was otherwise cocked and ready to fire.

3

Shivers filed an objection arguing that these undisputed facts do not support the reckless-endangerment enhancement. JA 135-36. In support, Shivers noted that he "discarded the firearm shortly after he left the store" and did not "point[ ] the firearm at law enforcement officers," "resist[ ] arrest," or "fight[ ] officers with the firearm." JA 135. The Probation Officer disagreed with Shivers's objection and asserted that merely dropping the firearm while in flight justified the enhancement under *United States v. Dennings*, 922 F.3d 232 (4th Cir. 2019). *See* JA 160-61.

The district court heard argument on the legal issue at sentencing. The court observed that, in its view, the issue presented a "very close call." JA 101. It explained that the Fourth Circuit's precedent "say[s] there must be something more than mere passive flight," but that the legal standard doesn't require "much more" and is satisfied if there is "something that can be specifically identified as giving rise to a potential danger to a bystander, to a law enforcement officer, or even to the suspect." JA 101. The court then concluded that, in this case, "there are a few things that can be pointed to as being that something more":

> Namely, the reaching for the gun in order to throw it, the throwing of the gun, the gun potentially going off when it hits the ground; any of those potentially causing harm to a bystander, or even the suspect himself, but particularly that issue of that motion that is involved in the throwing of the gun which had, I think, a substantial potential for a law enforcement officer perceiving that, in that hasty moment, as a threat causing a great danger to the suspect himself. And, therefore, it seems to me that to apply the standard, as it has been articulated by the Fourth Circuit, that the two level enhancement applies.

4

JA 101-02. After making its ruling, the court stated that "this case may be something that the defendant wants to take to the Fourth Circuit to have them decide whether or not this is actually enough." JA 102. And the court noted that it would "certainly not [be] insulted in any way by one of my cases going to the Fourth Circuit to clarify what the law is." JA 102.

The court's ruling produced an advisory guidelines range of 121 to 130 months, consisting of 37 to 46 months on the robbery count and a consecutive 84-month sentence on the Section 924(c) count. After considering the sentencing factors, the court granted a small downward variance for an aggregate sentence of 114 months. JA 117. In explaining its sentence, the court noted that "the factors for [the reckless-endangerment] enhancement were so slight, so close to the line, that I feel that a -- some degree of reduction based on the weakness of that element is warranted here." JA 122. In addition, the court stated that a variance was warranted by "the history and characteristics of the defendant," including his work toward "rehabilitation" after arrest, his "good support within the community," and "the other factors that are mentioned in the defendant's sentencing memorandum." JA 123.

After the court announced its sentence, the government requested the imposition of an alternative sentence by asking whether "the Court [would] be willing to say that even if the objection to the presentence report should have been sustained that the Court still believes that 114 months would be the appropriate sentence." JA 123-24. The court commented that the prosecutor was "trying to ward off an appeal,"

and the prosecutor agreed that he was "trying to help the appellate division, perhaps." JA 124.

The court declined to impose the government's requested alternative sentence. It stated instead that it would only "go so far as to say on the record that the sentence is based on the facts that are before the Court with regard to sentencing and the application of the factors under 3553(a). The technical calculation of the guidelines range is not really a significant factor in that calculation." JA 124. Consistent with that statement, the district court declined on the Statement of Reasons form to check the box indicating that the sentence would be "identical" even if "the guideline determination(s) made in this case are found to be incorrect." JA 165.

The district court entered judgment on February 16, 2021, and Shivers filed this appeal on March 1, 2021. JA 127-33, 134.

## SUMMARY OF ARGUMENT

This case presents a legal question regarding whether Section 3C1.2's reckless-endangerment enhancement applies where a defendant fleeing from the police on foot does nothing more than discard a firearm to the ground. Absent additional aggravating factors, the simple act of discarding a firearm during flight makes the situation safer for all involved by discouraging officers from deploying their own weapons. Because no additional aggravating factors are present in this case, this Court should hold that the undisputed facts here do not support the enhancement.

The Sixth Circuit recently adopted a similar interpretation of Section 3C1.2 in *United States v. Mukes*, 980 F.3d 526 (6th Cir. 2020). It held that dropping a loaded firearm to the ground did not create a substantial risk of accidental discharge without evidence that the firearm was "actually cocked" or otherwise "capable of discharging in its condition." *See United States v. Mukes*, 980 F.3d 526, 538 (6th Cir. 2020). That holding is consistent with this Court's unpublished authority, which has applied the enhancement based on evidence that a dropped firearm "was loaded, had a round chambered, and was ready to fire." *United States v. Jefferson*, 58 F. App'x 8, 10 (4th Cir. 2003). Here, the government did not assert or prove facts—such as the safety being off or the hammer being cocked—to establish that the revolver dropped by Shivers was capable of discharging in its condition. Accordingly, the enhancement cannot be justified based on the risk of accidental discharge from being dropped.

The undisputed facts also do not establish that Shivers's conduct created a risk that the officers would deploy their firearms in self-defense. This Court relied on that type of risk when affirming the enhancement in *United States v. Dennings*, 922 F.3d 232 (4th Cir. 2019). But the facts here are markedly different than in *Dennings*. There, the Court relied on evidence that officers observed the defendant reaching into his pocket for a firearm during the chase and that he refused to relinquish the firearm even after being taken to the ground by an officer. *Id.* at 237-38. Here, by contrast, Shivers threw the firearm to the ground and did not engage in any type of physical scuffle with officers. Unlike in *Dennings*, the undisputed facts simply do not establish that officers

observed Shivers engage in any conduct that could have led a reasonable officer to use deadly force in self-defense.

Because the undisputed facts in this case do not support the Section 3C1.2 enhancement, this Court should vacate the sentence and remand for a resentencing without the enhancement.

## STANDARD OF REVIEW

Failure to correctly calculate the applicable Guidelines range is a significant procedural error. *Gall v. United States*, 552 U.S. 38, 51 (2007). "In assessing whether a sentencing court properly applied the Guidelines, '[this Court reviews] the court's factual findings for clear error and its legal conclusions de novo.'" *United States v. Osborne*, 514 F.3d 377, 387 (4th Cir. 2008) (quoting *United States v. Allen*, 446 F.3d 522, 527 (4th Cir. 2006)). "Where a Guidelines application involves a mixed question of law and fact, the applicable standard turns on the nature of the circumstances at issue." *United States v. Dodd*, 770 F.3d 306, 309 (4th Cir. 2014) (citation omitted). "If the application turns on a question of fact, the clear error standard applies; if it turns on a legal interpretation, de novo review is appropriate." *Id.* (citation omitted).

## ARGUMENT

**I.** **The government's evidence is insufficient to satisfy the reckless-endangerment standard under U.S.S.G. § 3C1.2.**

The sole issue in this appeal is the applicability of a two-level guidelines enhancement under U.S.S.G. § 3C1.2. That provision applies if, and only if, "the

defendant recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer." U.S.S.G. § 3C1.2.

The relevant facts are undisputed, as set forth in the government's Statement of Relevant Conduct. *See* JA 142-43. They show that a police officer observed Shivers throw a firearm to the ground while attempting to flee from the police after the convenience-store robbery. JA 142-43. The question presented is whether that conduct alone is sufficient to warrant the Section 3C1.2 enhancement. The answer must be "No."

**A.    The undisputed facts in this case are insufficient to satisfy the Section 3C1.2 standard.**

This Court's decision in *United States v. Dennings*, 922 F.3d 232 (4th Cir. 2019), addressed the Section 3C1.2 standard in a similar context. The court noted that its case law on the enhancement was "limited" and that the decision was its first "published opinion" that "examined § 3C1.2's applicability to armed flight on foot." *Id.* at 236.

In *Dennings*, the court found the Section 3C1.2 enhancement justified based on "two possibilities: (1) Dennings' firearm could have discharged, intentionally or accidentally, and (2) Dennings' behavior could have led the pursuing officer to draw his own firearm in self-defense." *Id.* at 238. These possibilities, the court reasoned, created a risk to the responding officers and "innocent bystanders in the area." *Id.*

9

The first risk—of accidental discharge—arose primarily because the defendant continued to possess the firearm while resisting arrest. During flight, the defendant "fell to the ground and the officer landed on top of him." *Id.* at 234. Even at this point, "he [Dennings] 'was hesitant' in relinquishing control of his right arm when that arm was also on or near a firearm." *Id.* at 237-38. These facts, the Court reasoned, showed that Dennings "continued to resist arrest" after falling to the ground with the firearm in his pocket. *Id.* at 238.

The second risk—of officers drawing in self-defense—arose primarily because of the defendant's furtive hand movements while in flight. Specifically, "the police officer noticed that Dennings' 'right hand was not empty and freely swinging like his left hand,' but he could not determine if Dennings 'was digging into his pocket or holding onto something.'" *Id.* at 237.  In other words, the court explained, "his right arm and hand were moving in a way that suggested he had or was reaching for something." *Id.* at 238.

Here, in contrast to *Dennings*, the undisputed evidence does not establish that either of these risks was present. First, with respect to the risk of discharge, Shivers did not physically resist arrest or engage in any kind of physical scuffle with the pursuing officers. Instead, he discarded the firearm while fleeing. And then, when "confronted" by an officer "at the corner of Hilliard and Grove Street," Shivers "put his hands in the air and submitted to being handcuffed." JA 142. Aside from not involving a physical altercation, the facts also do not suggest that the manner in which

10

Shivers discarded the firearm created a risk of accidental discharge. As the Sixth

Circuit has explained in a Section 3C1.2 case, the mere act of discarding a loaded

firearm does not create a substantial risk of accidental discharge unless additional

evidence—such as the safety being off or the gun being cocked—shows that the gun

was "capable of discharging in its condition." *See United States v. Mukes*, 980 F.3d 526,

538 (6th Cir. 2020); *see also supra* Section I.B.3. Here, the government did not assert or

prove that the safety was off, that the revolver was cocked, or that it was otherwise

ready to fire. Absent such evidence, the Section 3C1.2 cannot be justified based on

the mere act of discarding a firearm during flight.

Second, with respect to the risk of officers drawing in self-defense, the record

here does not suggest that Shivers engaged in any type of furtive hand movements or

other conduct that might have led the officers to believe it would be necessary and

appropriate to deploy deadly force against him. Instead, Officer Crume stated simply

that he "noticed the suspect throw a silver revolver in the street as he ran toward

Grove Street." JA 142. None of the officers asserted that Shivers handled the firearm

suspiciously or in a way that might have given an officer reason to believe that Shivers

intended to use the firearm as a weapon against the pursuing officers. Absent such

evidence, the risk identified in *Dennings* cannot be established.

In short, the evidence here does not show that Shivers created either type of

risk present in *Dennings*. This Court should hold that the enhancement is unwarranted

as a matter of law based on the undisputed facts in this case.

11

**B.     The district court's decision to apply the enhancement was flawed both legally and factually.**

The district court's contrary conclusion is flawed both legally and factually. First, the district court committed legal error by relying on a potential risk to self, a type of risk that is excluded from the analysis by the plain text of the guidelines. *See supra* Section I.B.1. Second, the court erred factually by speculating that officers saw Shivers reach for the firearm in a way that created a risk of officers firing their weapons in self-defense. The undisputed facts do not support the court's speculation, and the available evidence points toward the opposite conclusion. *See supra* Section I.B.2. Third, the district court here erred by relying on a risk of accidental discharge in the absence of evidence that the firearm was cocked or otherwise ready to fire. That reasoning conflicts directly with the Sixth Circuit's decision in *Mukes*, which held that facts like those present in this case—where the defendant discarded a firearm to the ground in plain view of officers—do not support the enhancement based on either an accidental-discharge theory or an abandonment theory. *See supra* Section I.B.3.

**1.     The district court's reliance on the creation of a risk to self is legally erroneous.**

In explaining its decision to apply the enhancement, the district court stated that Shivers's conduct created a risk of harm to Shivers *himself*. It explained that, in its view, the relevant standard required proof of "something that can be specifically identified as giving rise to a potential danger to a bystander, to a law enforcement

12

officer, or *even to the suspect*." JA 101 (emphasis added). And the court reasoned that the "potential" for officers to perceive Shivers's conduct "as a threat" created "a great danger to the suspect himself." JA 102.

The court's reliance on potential harm to Shivers *himself* is a legal error. The plain text of the guidelines requires a defendant to create a substantial risk of harm "to another person." U.S.S.G. § 3C1.2. And the guidelines commentary reiterates this plain text. It specifically defines "[a]nother person" to include "any person, *except* a participant in the offense who willingly participated in the flight." U.S.S.G. § 3C1.2 cmt. n.4 (emphasis added); *see also United States v. Mukes*, 980 F.3d 526 (6th Cir. 2020) (relying on the plain guidelines text to conclude that "the enhancement does not apply for a risk of injury to the defendant").

In short, the district court committed legal error by failing to apply the guidelines text and commentary that prohibit reliance on a potential harm to self. To be sure, the court also relied on a conclusion that Shivers's conduct created a risk to others, such as "a bystander." JA 101-02. As explained below, that separate conclusion cannot stand in light of the undisputed evidence in this particular case.

## 2. The district court's assertion that a substantial risk arose from Shivers "reaching for" the firearm is unsupported by evidence.

The district court also reasoned in part that Shivers created a substantial risk to others by "reaching for the gun in order to throw it." JA 101. Although the

13

undisputed facts did not assert that officers observed Shivers "reach for" the gun, the

court nonetheless believed that he must have done so: "in order to throw or drop a

gun one has to reach for that gun." JA 92. Based on this belief, the court then asked:

> Why isn't it sufficient that the act of reaching for the gun gives rise to the
> possibility that a law enforcement officer is then going to fire a shot at the
> defendant or fire a warning shot that hits a bystander? Why doesn't that
> fulfill the requirement in *Dennings*?

JA 92. Defense counsel responded that there was not "anything on the record or

within the presentence report that an officer saw him reaching for the gun." JA 93.

Nonetheless, the court specifically reasoned that the act of "reaching for the gun in

order to throw it" was one of the "things that can be pointed to as being that

something more" required by Fourth Circuit precedent. JA 101.

The district court's reasoning—that the officers must have seen Shivers

"reaching for" the gun before throwing it—is simply wrong on the evidence before

the court. To be sure, if the evidence suggested that Shivers had concealed the firearm

in his pocket throughout the robbery and its aftermath, then the district court's logic

would be correct. But the evidence is undisputed that Shivers did not conceal the

firearm during the offense; he pointed it at the cashier and demanded money. JA 141.

Indeed, that very conduct—brandishing the firearm during the offense—gave rise to

the charge under 18 U.S.C. § 924(c) that subjected Shivers to a seven-year consecutive

sentence.

14

The district court's speculation that officers must have seen Shivers "reaching for" the gun before he threw it is baseless. The undisputed facts simply do not support that speculation; if anything, they contradict it. It is undisputed that Shivers had the gun in his hand when he brandished it, and that fact alone undercuts the district court's speculation that he must have reached for it in view of the officers. On the contrary, Shivers could have simply kept the firearm in his hand throughout the robbery, when he exited the store, and until he threw it to the ground. In that scenario, he could have thrown the firearm to the ground without any need to "reach [ ] for" it in view of the officers.

This aspect of the record—the absence of any evidence that officers saw Shivers reaching for or drawing the firearm—is critical. In *Dennings*, this Court identified a risk of the officers firing in self-defense where they observed the defendant reaching into his pocket for a firearm and where the defendant refused to relinquish the firearm even after an officer was on the ground on top of him. 922 F.3d at 237-38. Here, by contrast, the officer did not observe Shivers engaging in any furtive hand movements with the firearm or otherwise acting in a way that would have led a reasonable officer to feel so threatened that a potential use of deadly force against Shivers would have been appropriate. Instead, the officer merely observed Shivers throw the firearm to the ground, and that action could not have prompted any reasonable officer to fire in self-defense. On the contrary, the act of disarming himself—the only act observed by the officers—should have *discouraged* the officers

from firing their weapons. In other words, far from creating a substantial risk to others, the act of disarming made the situation safer by making it less likely that the officers would discharge their weapons.

### 3.    The evidence also does not establish a risk of accidental discharge or a risk of other danger to the community.

The district court also relied on "the gun potentially going off when it hits the ground" as a reason for applying the reckless-endangerment enhancement. JA 101. That rationale echoed the prosecutor's argument that the enhancement was warranted based on the risk of accidental discharge. JA 98-99. In making that argument, the prosecutor relied in part on the unpublished decision in *United States v. Jefferson*, 58 F. App'x 8 (4th Cir. 2003).

In *Jefferson*, the Court affirmed the reckless-endangerment enhancement on plain-error review where the defendant had discarded a pistol during flight from the police. *Id.* at 9-10. It explained that the gun "was loaded, had a round chambered, and was ready to fire." *Id.* at 10. Based on these facts, the court found "a risk that the pistol would discharge accidentally when dropped which created a substantial risk of injury to the pursuing officers." *Id.* In addition, the court suggested that an abandoned gun "would have constituted a substantial risk of injury to the community." *Id.*

The decision in *Jefferson* is unpublished and, therefore, not binding on a panel of this Court. *See Dennings*, 922 F.3d at 236 (recognizing that prior unpublished decisions on the Section 3C1.2 enhancement are not "binding on us, save to the extent their

16

reasoning is persuasive"). But even setting aside *Jefferson*'s non-precedential nature, the evidence in this case simply does not present either of the risks identified in *Jefferson*.

First, the evidence here is not sufficient to establish a substantial risk of accidental discharge because the government did not assert, much less prove, that the firearm was ready to fire such that accidental discharge was a factual possibility. That aspect of the record distinguishes this case from *Jefferson*, where the court expressly relied on evidence that the pistol "was loaded, had a round chambered, and was ready to fire." 58 F. App'x at 10. Here, by contrast, the record establishes that the revolver was "loaded," JA 143, but not that it "had a round chambered" or was "ready to fire."

The Sixth Circuit addressed a similar fact pattern in *United States v. Mukes*, 980 F.3d 526 (6th Cir. 2020). In that case, the district court relied in part on the theory "that Mukes created a dangerous situation by dropping the gun because it 'could have fired [on impact] and someone could have been hit.'" *Id.* at 538. Although the presentence report "note[d] that the firearm was loaded at the time with a round in the chamber," the court concluded that those undisputed facts were not sufficient to establish a risk of accidental discharge. *Id.* It explained that the government's risk-of-accidental-discharge theory was appropriate only if the evidence showed that the firearm was "actually cocked" when thrown so that an accidental discharge was a real possibility. *Id.* (quoting *United States v. May*, 430 F. App'x 529, 526 (6th Cir. 2011)). Because the government did not introduce evidence to show that the gun was

17

"capable of discharging in its condition," the court reversed and remanded "with instructions not to apply . . . the § 3C1.2 enhancement." *Id.* at 538, 540.

The Seventh Circuit adopted a similar rationale in *United States v. Lard*, 327 F.3d 551 (7th Cir. 2003). It found that the reckless-endangerment enhancement was warranted where the defendant "threw [a] rifle with a round in the chamber and the safety off." *Id.* at 554. When a police officer attempted to remove "the gun from the briar patch [where it landed], the weapon discharged." *Id.* at 552. Relying on these facts, the court affirmed the enhancement, reasoning that "throwing a rifle, which was fully capable of firing, could actually cause the gun to go off when it hit the ground." *Id.* at 554.

As these cases show, the risk of accidental discharge is enough to justify the reckless-endangerment enhancement only if the evidence establishes that the gun was ready to fire such that accidental discharge was a factual possibility. Here, as in *Mukes*, the government did not introduce such evidence. Instead, the record establishes only that the firearm was a revolver and that it was "loaded." JA 143. Because the government did not assert or prove other facts showing that the gun was in a condition to fire—including that a bullet was chambered, the hammer was cocked, and the safety was off—the evidence was insufficient to justify the enhancement under an accidental-discharge theory. *See Mukes*, 980 F.3d at 538 (reversing where the government did not prove that the gun was "capable of discharging in its condition").

The unpublished *Jefferson* case also set forth an alternative rationale for its plain-error holding, stating that an abandoned firearm could create "a substantial risk of injury to the community." 58 F. App'x at 10. Although the government cited that rationale in its argument here, JA 99, the district court did not adopt that argument in its decision. *See* JA 101-02. And for good reason: the undisputed facts in this case do not give rise to any risk of community endangerment, much less a substantial risk.

The Sixth Circuit's decision in *Mukes* is instructive. Similar to *Jefferson*, the Sixth Circuit has recognized that "a gun discarded in a public place" can, in some circumstances, create a sufficient risk to the public to justify the reckless-endangerment enhancement. *Mukes*, 980 F.3d at 539. But the court in *Mukes* clarified that such a risk does not arise when the firearm is discarded "in plain view of the police officers." *Id.* In that scenario, the facts do not establish "*any* potential risk that a bystander might have come across the weapon." *Id.*

The same rationale applies here. The facts are undisputed that Shivers discarded the firearm in plain view of the officers, thus eliminating any risk that the firearm would remain abandoned in a way that could pose a risk of injury to a community member who discovered it.

## CONCLUSION

This Court should hold that the § 3C1.2 enhancement is not warranted as a matter of law based on the undisputed facts in this case. It should therefore vacate Shivers's sentence and remand for a resentencing without the enhancement.

19

## **REQUEST FOR ORAL ARGUMENT**

The district court encouraged Shivers to appeal in this case so that this Court could "clarify what the law is" regarding the Section 3C1.2 enhancement. JA 102. To facilitate a published opinion that clarifies the law, this Court should hold oral argument.

Date:  November 2, 2021

Respectfully submitted:

Anthony Martinez
FEDERAL PUBLIC DEFENDER FOR
    THE WESTERN DISTRICT OF
    NORTH CAROLINA

/s/ Joshua B. Carpenter
Joshua B. Carpenter
Appellate Chief
Federal Public Defender for the
Western District of North Carolina
One Page Avenue, Suite 210
Asheville, NC 28801
(828) 232-9992
Joshua_Carpenter@fd.org

# <u>CERTIFICATE OF COMPLIANCE</u>

1.    This brief complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

[ X ] this brief contains [5,095] words.

[    ] this brief uses a monospaced type and contains [*state the number of*] lines of text.

2.    This brief document complies with the typeface and type style requirements because:

[ X ] this brief has been prepared in a proportionally spaced typeface using [*Microsoft Word 2016*] in [*14pt Garamond*]; *or*

[    ] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

Dated: <u>November 2, 2021</u>          <u>/s/ Joshua B. Carpenter</u>
                                        *Counsel for Appellant*

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on this 2nd day of November, 2021, I caused this Brief of

Appellant and Joint Appendix to be filed electronically with the Clerk of the Court

using the CM/ECF System, which will send notice of such filing to the following

registered CM/ECF users:

Amy E. Ray
OFFICE OF THE U.S. ATTORNEY
100 Otis Street, Room 233
Asheville, North Carolina  28801
(828) 271-4661

*Counsel for Appellee*

I further certify that, I caused the required copy of the Sealed Volume of the

Joint Appendix to be served on CD, via UPS Ground Transportation, upon counsel

for the Appellee, at the above address.

/s/ Joshua B. Carpenter
*Counsel for Appellant*